FIRST NATIONAL BANK OF
FRANKLIN, TEXAS,
Appellant,

v.

ASSOCIATED ATTORNEYS TITLE
AGENCY, INC., Appellee.

No. 10-88-003-CV.

Court of Appeals of Texas,
Waco.

Sept. 15, 1988.

Robert T. Swanton, Jr., Sleeper, Johnston, Helm & Fontaine, Waco, for appellant.

J. Bradley Smith, Vance, Bruchez & Goss, Bryan, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Bank from a take-nothing judgment in its suit against defendant Title Company.

Plaintiff Bank sued defendant for damages alleging: title company negligent in furnishing Bank information as to ownership of a lot in Bryan; that the information was erroneous; that Bank relied on same in advancing $125,000 but did not receive a valid lien.

Plaintiff Bank alleged that John Hicks, its president, requested Love Abstract Company to order a commitment for title insurance on a described lot in Bryan; that Love Abstract placed the order with defendant; that defendant on *October 19, 1983*, committed to issue a mortgagee's policy of title insurance for $125,000 for benefit of plaintiff; that title to the property was in Hicks Auto Supply, Inc., with exception that such corporation was not in good standing and not qualified to do business in Texas.

Plaintiff alleged Hicks Auto Supply was not in good standing because of failure to pay franchise taxes; that Bank requested Robert P. Hicks, president of Hicks Auto Supply, to pay up and get a certificate of good standing which he did; that Bank then prepared a note for $125,000 and a Deed of Trust on the lot for execution by Hicks Auto Supply, Inc.; that *on March 2, 1984*, Robert P. Hicks, president of Hicks Auto Supply, Inc., executed the note and plaintiff gave Robert Hicks $125,000, and recorded its Deed of Trust; that *on March 12, 1984*, Love Abstract sent defendant the certificate of good standing and requested defendant to issue the mortgagee's policy of title insurance; that *on March 17, 1984*, defendant learned it had made a mistake in the ownership of the lot; that it was actually owned by Robert P. Hicks and not the corporation. Defendant then issued a new commitment, dated *April 5, 1984*, to issue a policy of title insurance showing the property was owned by *Robert P. Hicks*, and refused to issue a policy based on the Deed

of Trust executed by Hicks Auto Supply, Inc.; that plaintiff then prepared a Correction Deed of Trust and sent it to Robert P. Hicks for execution. Before plaintiff could obtain the Correction Deed of Trust, RepublicBank–Waco levied on a judgment it held against Robert P. Hicks and sought to have the lot sold at Sheriff's sale. During litigation between plaintiff and Republic-Bank over lien priority, Robert P. Hicks filed for bankruptcy.

Plaintiff alleged that defendant furnished erroneous title information; that plaintiff in reliance thereon loaned $125,-000; that Hicks Auto Supply has defaulted on its note; that because of defendant's error plaintiff cannot foreclose on the lot; that defendant was negligent in obtaining or communicating the information to plaintiff; and that such negligence was a proximate cause of Bank's damage of $125,000.

Defendant title company answered that plaintiff was negligent; that plaintiff and [attorney] Stephen Fontaine both had in their possession documents showing title to the property was in Robert P. Hicks rather than Hicks Auto Supply, Inc.; and that such caused plaintiff's damages.

Trial was to a jury which found:

(1) The Bank justifiably relied upon the information provided by AATA indicating Hicks Auto Supply, Inc., owned the property.

(2) AATA knew the Bank intended to use the information it communicated in the preparation of loan documents.

(3) In providing the ownership information, AATA intended to influence the Bank in the preparation of loan documents intended to create a lien on the property.

(4) AATA failed to exercise ordinary care in obtaining or communicating the information that was provided to the Bank indicating Hicks Auto Supply, Inc., owned the property.

(5) "Was the failure, if any, of AATA to exercise ordinary care in obtaining or communicating the information that was provided to the Bank a proximate cause of financial loss to the Bank?" ANSWER: "No".

. . .

(7) The Bank failed to use ordinary care in "not renewing the commitment to issue insurance" which was a proximate cause of loss to the Bank.

(8) Stephen Fontaine failed to use ordinary care in relying on the information about ownership of the property in the commitment to issue title insurance.

(9) Such failure was a proximate cause of loss to the Bank.

. . .

(12) "What percentage of the failure to use ordinary care that caused loss to the Bank do you find from a preponderance of the evidence attributable to each of the [following] you have found to have failed to use ordinary cared?

| ANSWER: | AATA | –0– |
| | Bank | 80% |
| | Fontaine | 20%" |

Plaintiff thereafter made a motion that Issue 5 and 12 were not supported by any probative evidence and should be disregarded and that plaintiff should be granted a new trial. The trial court rendered judgment on the verdict that plaintiff take nothing.

Plaintiff appeals on 4 points:

(1) The trial court erred in overruling plaintiff's motion to disregard the answer to Issue 5 *because the evidence established as a matter of law that the failure of defendant to exercise ordinary care in obtaining or communicating information provided to the bank was a proximate cause of financial loss to the bank.*

(2) The trial court erred in overruling plaintiff's motion for new trial because the jury's answer to Issue 5 is against the great weight and preponderance of the evidence.

(3) The trial court erred in overruling plaintiff's motion to disregard the answers to Issue 12 *because the evidence established as a matter of law that a percentage of the negligence which caused loss to the Bank was attributable to defendant.*

(4) The court erred in overruling plaintiff's motion for new trial because the jury's answer to Issue 12 is against the great weight and preponderance of the evidence. [Emphasis added.]

The evidence reflects that John Hicks, President of plaintiff Bank, requested Love Abstract to secure title insurance on a described lot in Bryan; that Love Abstract placed the order with defendant; that defendant issued commitments to issue a policy of title insurance for Bank's benefit showing title to the property in Hick Auto Supply, Inc., but that Hicks Auto Supply, Inc., was not in good standing and was not qualified to do business; that the reason Hicks Auto Supply, Inc., was not in good standing was because of failure to pay its franchise taxes; that plaintiff requested Hicks Auto Supply to pay the taxes which it did; that plaintiff then had a note and Deed of Trust prepared which showed Hicks Auto Supply, Inc., owner of the property; that Robert P. Hicks signed the note for Hicks Auto Supply, Inc.

Defendant's last commitment was dated *October 18, 1983*, and stated, "The company shall not be liable for any title defect unless a title insurance policy is hereafter issued by it * * * " and further that the commitment is good for only *"90 days after the effective date hereof [October 18, 1983]"*. Plaintiff never sought issuance of a policy within the 90–day period, but prepared the note and Deed of Trust and had Robert P. Hicks sign same and disbursed the $125,000 *on March 2, 1984 [43 days after expiration of defendant's commitment]*. There is evidence that John Hicks, plaintiff's president, and Robert P. Hicks are brothers; that the note prepared by plaintiff Bank for Hicks Auto Supply, Inc., did not bind Hicks Auto Supply, Inc., it providing: "It is agreed that the maker of hereof shall have no liability for the repayment of this note and in the event of default hereunder the property securing this debt shall be the sole security for this debt"; that the house and lot securing the $125,000 note were worth only $90,000; that plaintiff's president, John Hicks, testified that one of the reasons the matter took so long was he had problems communicating with Robert Hicks because he was in prison at the time; that John Hicks was an incorporator of Hicks Auto Supply, Inc.; that plaintiff Bank and its attorney Stephen Fontaine both had information that Robert P. Hicks was the owner of the property and not Hicks Auto Supply, Inc.; and that the $125,000 funded by plaintiff Bank on the note executed by Robert P. Hicks as president of Hicks Auto Supply, Inc., was funded to Bishop College for "release of threatened litigation against both the bank and Robert P. Hicks"; and that this payment of $125,000 was negotiated to obtain a release from Bishop College for both Robert Hicks and the Bank from "any liability arising out of any of the activities involving Bishop College." [Emphasis added.]

Even though defendant provided incorrect information to the bank as to ownership of the property, the bank could suffer no loss until it closed the loan and advanced the funds. The bank did this on an expired commitment. Had the bank closed the loan and advanced the funds on a live commitment, defendant would have been bound to issue the policy and the bank would have been protected. The bank and its attorney had information showing Robert P. Hicks was owner of the property; that plaintiff bank's president was a brother of Robert P. Hicks and an incorporator of Hicks Auto Supply, Inc.; and that the $125,000 was funded to Bishop College to obtain a release for Robert P. Hicks and the Bank from liability.

The evidence is ample to sustain the jury's answers to Issues 5 and 12. Moreover, points 2 and 4 were not raised in plaintiff's motion for new trial and are not preserved. Rule 52 T.R.A.P.

All of plaintiff's points are overruled.

AFFIRMED.